**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| OCEANA et al.,<br><br>        Plaintiffs,<br><br>v.<br><br>BUREAU OF OCEAN ENERGY<br>MANAGEMENT et al.,<br><br>        Defendants,<br><br>and<br><br>AMERICAN PETROLEUM<br>INSTITUTE et al.,<br><br>        Intervenors. | Civil Action 12-981 (RC) |

**MEMORANDUM OPINION**

Four national environmental groups brought this suit against several federal agencies to challenge the approval of two oil and gas lease sales in the Gulf of Mexico. The agencies have moved to transfer the case to the Southern District of Alabama. Their motion will be denied.

**I. BACKGROUND**

After the oil rig known as the *Deepwater Horizon* exploded and sank into the Gulf of Mexico, releasing almost five million barrels of oil over many weeks, the agency now known as the Bureau of Ocean Energy Management reconsidered the environmental hazards of oil and gas exploration on the outer continental shelf. The Bureau (as the court will refer to the agency) asked the National Marine Fisheries Service and the Fish and Wildlife Service to begin another consultation regarding the effects of such activity on species and habitats protected by the

Endangered Species Act, which those services agreed to do. Am. Compl. ¶¶ 80–81. The Bureau also decided to prepare a supplemental environmental impact statement to "consider new circumstances and information arising . . . from the *Deepwater Horizon* blowout and spill" before resuming the series of lease sales that had authorized that operation. *See* 75 Fed. Reg. 69,122 (Nov. 10, 2010). The Bureau issued draft supplemental environmental impact statements for Lease Sale 218, on the continental shelf off the coast of Texas and Louisiana, *see* 76 Fed. Reg. 22,139 (Apr. 20, 2011), and Lease Sale 216/222, off the coasts of Louisiana, Mississippi, and Alabama, *see* 76 Fed. Reg. 38,676 (July 1, 2011). Public meetings were held in Houston and New Orleans to obtain comments on Lease Sale 218, *see* 76 Fed. Reg. at 22,139, and in those cities as well as Mobile to obtain comments on Lease Sale 216/222, *see* 76 Fed. Reg. at 38,676.

The Bureau published final supplemental environmental impact statements for both lease sales, *see* 76 Fed. Reg. 50,245 (Aug. 12, 2011) (Lease Sale 218); 77 Fed. Reg. 2,991 (Jan. 20, 2012) (Lease Sale 216/222), then released its records of decisions, which authorized (with certain exceptions) the "offer for lease . . . for oil and gas operations" of "all unleased blocks" in two regions of the outer continental shelf in the Gulf of Mexico, *see* 76 Fed. Reg. 70,478, 70,479 (Nov. 14, 2011) (Lease Sale 218); 77 Fed. Reg. 29,682 (May 18, 2012) (Lease Sale 216/222). Notices of sale were published on the same days as the records of decision. *See* 76 Fed. Reg. 70,473 (Nov. 14, 2011) (Lease Sale 218); 77 Fed. Reg. 29,683 (May 18, 2012) (Lease Sale 216/222).

The plaintiffs brought suit to vacate Lease Sale 218, alleging that the Bureau had violated the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321 *et seq.*, by relying on an inadequate supplemental environmental impact statement, as well as the Endangered Species

Act, 16 U.S.C. §§ 1531 *et seq.*, by failing to complete a consultation with the National Marine Fisheries Service and the Fish and Wildlife Service before approving the lease sale. *See* Am. Compl. ¶¶ 2–4, Oceana v. Bureau of Ocean Energy Management, No. 11-cv-2208 (D.D.C. Feb. 17, 2012). The plaintiffs then brought this suit, alleging that the Bureau had violated NEPA in approving Lease Sale 216/222 and seeking to vacate the sale on that basis. Compl. ¶¶ 2–3. The plaintiffs dismissed their NEPA challenge to Lease Sale 218 with prejudice but preserved their Endangered Species Act challenge, *see* Stipulation of Dismissal, Oceana v. Bureau of Ocean Energy Management, No. 11-cv-2208 (D.D.C. Sept. 27, 2012), and amended their complaint in this case. The plaintiffs now allege that Lease Sale 216/222 violated NEPA, Am. Compl. ¶ 2, that both lease sales violated the Endangered Species Act, *id.* ¶ 3, and that the National Marine Fisheries Service violated the Administrative Procedure Act, 5 U.S.C. § 706(1), by unreasonably delaying the completion of its duty to consult with the Bureau about protected species and habitats, *id.* ¶ 4. The defendants have moved to transfer venue to the Southern District of Alabama pursuant to 28 U.S.C. § 1404(a).

## II. LEGAL STANDARD

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ." 28 U.S.C. § 1404(a). "The idea behind s. 1404(a) is that where a 'civil action' to vindicate a wrong—however brought in a court—presents issues and requires witnesses that make one District Court more convenient than another, the trial judge can, after findings, transfer the whole action to the more convenient court." *Continental Grain Co. v. Barge F.B.L.-585*, 364 U.S. 19, 26 (1960). "[T]he main purpose of section 1404(a) is to afford defendants protection

3

where maintenance of the action in the plaintiff's choice of forum will make litigation oppressively expensive, inconvenient, difficult or harassing to defend." *Starnes v. McGuire*, 512 F.2d 918, 927 (D.C. Cir. 1974) (en banc); *accord Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) ("[T]he purpose of the section is to prevent the waste 'of time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" (quoting *Continental Grain*, 364 U.S. at 26, 27)). When venue is properly laid in this district, "[t]ransfer elsewhere under Section 1404(a) must . . . be justified by particular circumstances that render [this] forum inappropriate by reference to the considerations specified in that statute. Absent such circumstances, transfer in derogation of properly laid venue is unwarranted." *Starnes*, 512 F.2d at 925–26.

Section 1404(a) "vests 'discretion in the district court to adjudicate motions for transfer according to an "individualized, case-by-case consideration of convenience and fairness."'" *Reiffin v. Microsoft Corp.*, 104 F. Supp. 2d 48, 50 (D.D.C. 2000) (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen*, 376 U.S. at 622)). And it "directs a district court to take account of factors other than those that bear solely on the parties' private ordering of their affairs. The district court also must weigh in the balance the convenience of the witnesses and those public-interest factors of systemic integrity and fairness that, in addition to private concerns, come under the heading of 'the interest of justice.'" *Stewart Org.*, 487 U.S. at 30. The precise "standards to be considered in determining whether to grant or deny a section 1404(a) motion to transfer are generally . . . left to the discretion of the trial court," *SEC v. Page Airways, Inc.*, 464 F. Supp. 461, 463 (D.D.C. 1978), which is "broad" but "not untrammeled," *Fine v. McGuire*, 433 F.2d 499, 501 (D.C. Cir. 1970) (per curiam) (noting that the trial court

must "give consideration to the traditional [forum non conveniens] factors, including the plaintiff's choice of forum").

### III. ANALYSIS

**A. Proper Venue**

The defendants agree that venue is proper in this district, Defs.' Br. at 4 n.1, but argue for transfer to the Southern District of Alabama to promote "the interest of justice." 28 U.S.C. § 1404(a).[1] They first must show that this suit "might have been brought" there. *Id.*; *see Pres. Soc'y of Charleston v. U.S. Army Corps of Eng'rs*, 893 F. Supp. 2d 49, 53 (D.D.C. 2012). The plaintiffs do not dispute that the Southern District of Alabama would have jurisdiction over the case and the parties. The defendants argue that venue would also be proper in that court, because "a substantial part of the events or omissions giving rise to the claim[s] occurred" there. 28 U.S.C. § 1391(e)(1). The defendants note that the case concerns the effects of the *Deepwater Horizon* disaster and the potential impact of additional offshore oil and gas drilling and extraction on environmental resources, species, and habitats in the Gulf of Mexico and its estuary systems. They reason that, because some of those effects were felt in Alabama and some of those resources, species, and estuary systems are located in Alabama, venue would be proper there. In a footnote, the plaintiffs dispute the sufficiency of this showing, but offer no argument

---

[1] "Courts in this circuit must examine challenges to . . . venue carefully to guard against the danger that a plaintiff might manufacture venue in the District of Columbia. By naming high government officials as defendants, a plaintiff could bring a suit here that properly should be pursued elsewhere." *Cameron v. Thornburgh*, 983 F.2d 253, 256 (D.C. Cir. 1993). But the defendants do not argue that the plaintiffs have improperly "manufacture[d] venue in the District of Columbia" "[b]y naming high government officials as defendants." Rather, the defendants concede that the suit could properly be pursued here, though they argue that it would be more justly heard elsewhere.

5

against it, Pls.' Br. at 4 n.2; the defendants note that one plaintiff organization challenged an earlier Gulf of Mexico lease sale in the Southern District of Alabama, where it argued that venue was proper. In the face of such a weak opposition, the court considers the point effectively conceded, and goes on to decide, "by reference to the considerations specified in" section 1404(a), whether the "particular circumstances" of this case "render [this] forum inappropriate." *Starnes*, 512 F.2d at 925.

### B. Transfer in the Interest of Justice

Although "plaintiff's choice of forum is normally to be preferred," *Starnes*, 512 F.2d at 927, there is a "local interest in having localized controversies decided at home," *Am. Dredging Co. v. Miller*, 510 U.S. 443, 448 (1994) (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509 (1947)) (discussing the doctrine of forum non conveniens). When plaintiffs bring suit in this district to challenge federal decisions about the use of land and the management of environmental resources located elsewhere, these principles come into tension. Presented with a section 1404(a) motion, courts typically assess the relative strength of the connection between the case and this district, as opposed to the district to which transfer is sought. Sometimes that balancing is explicit.[2] Other times courts discuss the considerations separately—but even then,

---

[2] *See, e.g.*, *Nat'l Ass'n of Home Builders v. EPA*, 675 F. Supp. 2d 173, 180 (D.D.C. 2009) ("[A]lthough there is some local interest in deciding this case in the District of Arizona, this consideration is outweighed by the need to grant deference to the plaintiffs' choice of forum . . . ."); *Otay Mesa Prop., L.P. v. U.S. Dep't of Interior*, 584 F. Supp. 2d 122, 128 (D.D.C. 2008) ("Because this controversy does not present issues of particularly local concern, the Federal Defendants cannot overcome the deference afforded to the Plaintiffs' choice of forum even where . . . the connection of this controversy to southern California is . . . somewhat stronger than it is to the District of Columbia."); *Sierra Club v. Van Antwerp*, 523 F. Supp. 2d 5, 13 (D.D.C. 2007) ("[T]he Court is unable to say that the localized Florida impact of this suit sufficiently weighs in favor of transfer absent other factors that would contribute toward undermining this Court's great deference for the plaintiffs' chosen forum.") (internal quotation

the same factors that control the weight accorded to the plaintiff's choice of forum also govern the evaluation of the strength of local interests.[3]

Proceeding in that manner, the court notes several facts that link this case to the District of Columbia. Two of the four plaintiff organizations have their headquarters in the District, and the others have offices here. None have offices in Alabama.[4] The records of decision for the

---

marks omitted); *see also Nw. Forest Res. Council v. Babbitt*, 1994 WL 908586, at *3 (D.D.C. Apr. 13, 1994) ("Resolution of defendant's motion to transfer . . . rests primarily on balancing plaintiffs' choice of forum against the interest of justice.").

[3] *See, e.g.*, *Pres. Soc'y*, 893 F. Supp 2d at 54, 57 (giving diminished weight to plaintiffs' choice of forum because "Plaintiffs' claim is overwhelmingly local in nature and has no meaningful nexus with the District of Columbia" and concluding separately that the interests of justice favor transfer because "[t]he fundamental issue in this case . . . is a local controversy in the purest sense"); *Airport Working Grp. v. U.S. Dep't of Def.*, 226 F. Supp. 2d 227, 230, 232 (D.D.C. 2002) (independently concluding that "plaintiffs' choice of forum is entitled to limited deference because all of the plaintiffs in this case are based in the Central District of California and the subject matter of the lawsuit . . . is located there" and that the interests of justice favor transfer because "this case arises from an administrative decision that involves land situated in Orange County and affects only the local citizenry there"); *Trout Unlimited v. U.S. Dep't of Agric.*, 944 F. Supp. 13, 17, 19–20 (D.D.C. 1996) (finding that because "the plaintiff's choice of forum, the District of Columbia, has no meaningful ties to or interest in this suit" the influence of that choice is lessened, and concluding that the many ties between Colorado and the subject of the case indicate that the interest of justice would be served by transfer there).

[4] *See, e.g.*, *Van Antwerp*, 523 F. Supp. 2d at 11 (granting "a strong presumption in favor of the chosen forum" where "[o]f the five plaintiffs that filed suit . . . at least one . . . has its headquarters in the District of Columbia, and is thus clearly a resident of this District"); *Greater Yellowstone Coal. v. Bosworth*, 180 F. Supp. 2d 124, 129 (D.D.C. 2001) (denying transfer where "two of the five plaintiffs . . . have offices in the District of Columbia"); *Wilderness Soc'y v. Babbitt*, 104 F. Supp. 2d 10, 14 (D.D.C. 2000) (denying transfer where "[f]our of the [eight] plaintiffs are headquartered in Washington, D.C. and two others have offices here"); *cf. Pres. Soc'y*, 893 F. Supp 2d at 54 (granting transfer where the "[p]laintiffs are based in Charleston and . . . neither alleges that it has any offices in the District of Columbia or members who live here"); *Airport Working Grp.*, 226 F. Supp. 2d at 230 (granting transfer where "all of the plaintiffs in this case are based in the Central District of California"); *Citizen Advocates for Responsible Expansion, Inc. (I-Care) v. Dole*, 561 F. Supp. 1238, 1239 (D.D.C. 1983) (defendant's burden to demonstrate that transfer is proper "is substantially diminished where . . . transfer is sought to the forum where plaintiffs reside"); *but see Sierra Club v. Flowers*, 276 F. Supp. 2d 62, 67 (D.D.C. 2003) ("[T]he fact that the parties each have offices in the District of Columbia is not dispositive

challenged lease sales were both signed by a Department of Interior official in Washington, D.C. The government does not argue that any relevant decisions were made in Alabama.[5] On the other hand, a public meeting about Lease Sale 216/222 was held in Mobile, where the Southern District of Alabama sits.[6] The other two meetings were held in Houston and New Orleans, as were both public meetings for Lease Sale 218. And the supplemental environmental impact statements for the lease sales were signed by Bureau officials in New Orleans, while requests for renewed consultation under the Endangered Species Act were sent from the Bureau's New Orleans office to the National Marine Fisheries Service office in St. Petersburg, Florida. Obviously, these activities do not suggest a strong tie to either potential forum. What they do suggest is that the challenged lease sales—and, more broadly, the future of offshore oil and gas production in the Gulf of Mexico—are subjects of considerable concern throughout the Gulf

---

of the question of deference" to the plaintiff's choice of forum.).

[5] *See, e.g.*, *Greater Yellowstone*, 180 F. Supp. 2d at 128–29 (denying transfer where "federal government officials in the District of Columbia were involved in the [challenged] decision"); *Wilderness Soc'y*, 104 F. Supp. 2d at 14 (denying transfer where "Secretary Babbitt . . . signed the Record of Decision in the District of Columbia"); *cf. Pres. Soc'y*, 893 F. Supp. 2d at 55–56 (granting transfer where challenged project was approved in location to which transfer was sought and "the Complaint alleges no involvement by . . . staff based in Washington"); *Flowers*, 276 F. Supp. 2d at 68 (granting transfer where "[f]ederal officials in Florida, not the District of Columbia, signed the final record of decision authorizing the permits"); *Trout Unlimited*, 944 F. Supp. at 18 (granting transfer where "[t]he decision-making process . . . occurred in Colorado, not in Washington, D.C."); *but see Airport Working Grp.*, 226 F. Supp. 2d at 230 (granting transfer even though "the [record of decision] was signed by a Department of Navy official based in the District of Columbia").

[6] *See Airport Working Grp.*, 226 F. Supp. 2d at 231 (granting transfer where "the citizens of Orange County have participated in public hearings"); *see also Flowers*, 276 F. Supp. 2d at 70 (granting transfer where "a substantial majority of public comments on the . . . [environmental impact statement] came from Florida-based organizations or individuals"); *but see Wilderness Soc'y*, 104 F. Supp. 2d at 14 (denying transfer even though "seven of the nine public meetings were held in Alaska").

Coast region. Indeed, the government concedes that "the question of venue in this case is somewhat complicated because these species and resources 'reside throughout the Gulf of Mexico, not just in Alabama' and because certain aspects of the decisions leading to the challenged lease sales occurred in other Gulf states . . . ." Defs.' Reply at 5 (quoting Pls.' Opp. at 8).

Reasoning that local controversies should be resolved at home, courts in this district have transferred cases challenging the addition of pilings to a boat pier in Charleston, South Carolina, *Pres. Soc'y*, 893 F. Supp. 2d at 54, 57, the issuance of mining permits in the southern Florida Everglades, *Flowers*, 276 F. Supp. 2d at 71, the use of an abandoned air base in Orange County, California, *Airport Working Grp.*, 226 F. Supp. 2d at 232, the operation of a dam and reservoir in Colorado, *Trout Unlimited*, 944 F. Supp. at 20, and the construction of two highway segments in Fort Worth, Texas, *Citizen Advocates for Responsible Expansion*, 561 F. Supp. at 1239; *see also Seariver Maritime Fin. Holdings, Inc.*, 952 F. Supp. 9, 11–12 (D.D.C. 1997) (transferring challenge to law preventing Exxon Valdez from operating in Prince William Sound to the District of Alaska). But, as all parties acknowledge, the lease sales challenged here are not "overwhelmingly local in nature" in the way that those controversies were. *Pres. Soc'y*, 893 F. Supp. 2d at 54. The communities concerned with and affected by these lease sales are spread throughout the Gulf Coast region, not concentrated in one city or county. *Cf., e.g.*, *id.* at 57 (noting that "it is the citizens of Charleston who will most clearly feel the effects of the [challenged] project"); *Airport Working Grp.*, 226 F. Supp. 2d at 232 (challenged decision "affects only the local citizenry" in Orange County); *see also Otay Mesa*, 584 F. Supp. 2d at 127 ("In each of the cases that the Federal Defendants cite, the local population faced a specific

9

injury of a particularly local nature either as a result of, or upon enjoinment of, a challenged action.").

And other cases suggest that questions of national policy or national significance are quite appropriately resolved here (or, at least, no more appropriately resolved elsewhere). One judge in this district denied transfer of a challenge to the regulation of recreational snowmobile use in Yellowstone National Park, explaining that "Plaintiffs' ties to the District of Columbia . . . and the national scope of the environmental issues at stake," among other factors, counseled against transfer, and that "[t]he management of the National Parks and the interpretation of federal environmental statutes are nationwide concerns," not localized controversies. *Greater Yellowstone Coal. v. Kempthorne*, 2008 WL 1862298, at *7 (D.D.C. Apr. 24, 2008). Another judge refused to transfer a challenge to the decision to begin oil and gas leasing in the National Petroleum Reserve in Alaska, because the case was "not a local dispute affecting only the local residents of the Northern Slope of Alaska," but instead "affect[ed] a national energy reserve the management of which has received national attention." *Wilderness Soc'y*, 104 F. Supp. 2d at 17; *see also Pres. Soc'y*, 893 F. Supp. 2d at 55 (distinguishing *Wilderness Society* on the grounds that it concerned "the nationwide use of resources from the Strategic Petroleum Reserve" (emphasis omitted)); *Airport Grp.*, 226 F. Supp. 2d at 230 n.1 ("This case is clearly distinguishable from *Wilderness Society v. Babbitt*, where the decisions regarding the development of oil and gas in Alaska had significant national implications that weighed against transfer to Alaska."); *but see Starnes*, 512 F.2d at 928 (disclaiming any "blanket rule that 'national policy' cases should be brought here").

Judges in this district differ in their approach to Endangered Species Act challenges.

10

Some regard the protection of threatened species and habitats as inherently national in scope, even when the physical range of the species is quite small. *See, e.g.*, *Otay Mesa*, 584 F. Supp. 2d at 126 (denying transfer, explaining that the decision to designate California land as critical habitat for the endangered San Diego fairy shrimp "affects the residents of San Diego County no more directly than it does the residents of the District of Columbia, or any other district within the United States, as this is an issue regarding the critical habitat of an endangered species whose vitality is as much a national concern as it is a local concern"); *Van Antwerp*, 523 F. Supp. 2d at 13 (denying transfer, describing alleged violations of the Endangered Species Act and Clean Water Act as "national in scope" because of the "national character of the statutes . . . and the fact that the issue here is whether federal agencies complied with federal law"). When judges have instead ruled that an Endangered Species Act challenge was properly decided at home, that "home" has rarely been as broad as the entire Gulf Coast region. *See, e.g.*, *Otter v. Salazar*, 718 F. Supp. 2d 62, 64 (D.D.C. 2010) (granting transfer on the grounds that "any impact of the [Endangered Species Act] listing determination is completely localized to Idaho: all potential activities that may affect the slickspot peppergrass are located in Idaho, including housing developments, oil pipelines, and electric transmission lines, all of which have localized considerations in Idaho").

In this case, national groups located in Washington, D.C. have brought suit to challenge lease sales approved by a federal official here, which re-opened "a vital national resource reserve held by the Federal Government for the public," 43 U.S.C. § 1332(3), to oil and gas exploration after a nationally significant environmental disaster. That activity will take place on the outer continental shelf, beyond the bounds of any state. The plaintiffs allege violations of national

environmental statutes.  The government argues for transfer to Alabama, where some of the species and habitats at issue are located, and where some of the effects of the *Deepwater Horizon* disaster were felt.  The court does not doubt that many Alabamans are acutely interested in the outcome of this case, as are many citizens of Texas, Louisiana, Mississippi, and Florida.  But it cannot fairly say that this is a "localized controversy" that should fairly be heard in Alabama and nowhere else, nor that the connections between the plaintiffs, this case, and this forum are so weak as to deprive the plaintiffs of their prerogative to choose where they will sue.  *See Gross v. Owen*, 221 F.2d 94, 95 (D.C. Cir. 1955) ("It is almost a truism that a plaintiff's choice of a forum will rarely be disturbed . . . .").

The government goes on to argue that the Southern District of Alabama's "familiarity with the governing laws" favors transfer, *Pres. Soc'y*, 893 F. Supp. 2d at 54, because that court has already heard and decided a factually and legally similar case in the government's favor, *see* Defenders of Wildlife v. Bureau of Ocean Energy Management, No:1:10-cv-254 (S.D. Ala. May 8, 2012).  This principle is generally applied in cases that implicate state law, with which federal courts are not equally familiar.  *Compare Airport Working Grp.*, 226 F. Supp. 2d at 232 (transferring case where "a district court located in the Central District of California will benefit from its familiarity with local laws and regulations") *and Trout Unlimited*, 944 F. Supp. at 19 (transferring case that "may . . . , in part, involve the interpretation of Colorado law") *with Greater Yellowstone*, 180 F. Supp. 2d at 129 (transferee court has no advantage where "case does not involve any issues of state law" (emphasis deleted)) *and Wilderness Soc'y*, 104 F. Supp. 2d at 16 (same).  It is of course well settled that no federal court is more competent than any other to resolve questions of federal law, which are the only legal questions at issue here.  *See*,

*e.g.*, *Pres. Soc'y*, 893 F. Supp. 2d at 57; *Otay Mesa*, 584 F. Supp. 2d at 125 n.1; *Flowers*, 276 F. Supp. 2d at 70 n.6 (all citing *In re Korean Air Lines Disaster of Sept. 1, 1983*, 829 F.2d 1171, 1175 (D.C. Cir. 1987)).  Instead, the government seems to be arguing that the interests of justice favor the conservation of judicial resources, which would be best accomplished by transferring the case to a court that is already familiar with a related matter.

Of course, it is not the Southern District of Alabama as a whole that is familiar with the earlier matter, but rather one particular judge there.  Transferring this case to another judge in that district would not seem to conserve any judicial resources at all.  On the other hand, if a transfer would mean that the same judge who ruled in favor of the government in the earlier case would also hear this one, then concerns about forum shopping—which implicates the "systemic integrity" that "[t]he district court . . . must weigh in the balance," *Stewart Org.*, 487 U.S. at 30—would present themselves.  *See Greater Yellowstone*, 180 F. Supp. 2d at 130 ("The plausible possibility that the defendants are using Section 1404(a) as a means of forum shopping weighs against granting the defendants' motion."); *see also Van Antwerp*, 523 F. Supp. 2d at 12–13 ("[T]his Court is well-aware that for each strategic rationale that motivated plaintiffs to file suit in this District, there is likely an equally compelling strategic basis—aside from the statutory standards of convenience and justice—for defendants' . . . strong desire to ensure that this litigation takes place in the Middle District of Florida."); *but cf. Nw. Forest Res. Council*, 1994 WL 908586, at *4 (concluding that "substantial judicial resources will be saved by a transfer" because the transferee court "is extremely knowledgeable about the facts of this case and its administrative record").  It appears that the Southern District of Alabama would not treat this case as related to the earlier, similar matter, which is no longer pending in that district, *see*

LOCAL CIV. R. 3.3(a) (S.D. Ala.), but even if it did, that fact would not suggest that transfer there was in the interest of justice.[7]

## IV. CONCLUSION

"[P]laintiff's choice of forum is normally to be preferred," *Starnes*, 512 F.2d at 927, and here it will be. The controversy at the heart of this case is not "localized" to the Southern District of Alabama, and that forum is no more familiar with the governing laws than this one. The court therefore declines to transfer the case "in the interest of justice." 28 U.S.C. § 1404(a). The government's motion will be denied.

Rudolph Contreras
United States District Judge

Date: August 23, 2013

---

[7] In its opening brief, the government further argued that by transferring this case the court would place it on a less congested docket, but the plaintiffs' analysis of the statistics suggests otherwise and the government appears to have abandoned the argument.